UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CEMONE MURCHISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-476-G |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cemone Murchison brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _") and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.[1]

PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on May 20, 2014, alleging a disability-onset date of May 20, 2014. R. 19, 194-201, 202-07, 266-67.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Following denial of Plaintiff's applications initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 34-53, 54-85, 86-119. The ALJ issued an unfavorable decision on April 18, 2016. R. 19-28. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-4; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

ADMINISTRATIVE DECISION

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2014, the alleged onset date. R. 21. At step two, the ALJ determined that Plaintiff had the severe impairments of major depressive disorder and posttraumatic stress disorder. R. 21. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22-23.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 23-26. The ALJ found that Plaintiff had the RFC to perform light work subject to the additional limitations that:

> She can stand and/or walk 6 hours out of an 8-hour workday and can sit 6 hours out of an 8-hour workday. The claimant has abilities for understanding, remembering, and carrying out only simple instructions; making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; responding appropriately to

supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. However, the claimant must have work that does not require joint decision-making or teamwork and contact with members of the general public must be no more than occasional and must not require the claimant to direct or receive directions from such members. In other words, interactions on the job with other people must be of a superficial rather than of a substantive nature. To be descriptive, rather than proscriptive, the claimant is able to do only simple, routine, solitary, repetitive work that does not require close oversight by a supervisor. For medication/mental reasons, the claimant must avoid exposure to unguarded hazards. These are things like uneven walking surfaces, open nip points, unprotected heights, moving machinery, open pits, open flames, open pools of water, that sort of thing dangerously sharp objects. Finally, the claimant must have work that does not require more than occasional exposure to extremes of temperature, loud noises, smoke, flashing lights or other intrusive environmental distractions. Put descriptively rather [than] proscriptively, the claimant needs an indoors, climate-controlled environment.

R. 23; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining "light work"). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 26.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the hearing testimony of a vocational expert regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as garment sorter, marker, and final assembler, all of which offer jobs that exist in significant numbers in the national economy. R. 26-27. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 20, 2014, through the date of the decision. R. 27-28.

3

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff argues that the ALJ's decision lacks substantial supporting evidence because: (1) the ALJ did not properly consider the opinions of Plaintiff's physicians, (2) the ALJ did not properly consider the opinion of the state-agency examining psychologist; and (3) the ALJ did not properly consider Plaintiff's subjective complaints. *See* Pl.'s Br. (Doc. No. 13) at 2-9, 9-15.

4

A. *Whether the ALJ Properly Considered the Opinions of Plaintiff's Physicians*

Plaintiff argues that the ALJ erred in evaluating the opinions of treating sources Fatema Haque, MD, Mario Kirk, PhD, Limei Yang, MD, and Brandon Schader, MD. Specifically, Plaintiff alleges that certain Global Assessment of Functioning ("GAF") scores[2] assessed by these practitioners were medical opinions and therefore should have been analyzed and weighed as such by the ALJ. Pl.'s Br. at 2-3.

1. Plaintiff has not shown that the GAF scores were medical opinions

Even assuming that Drs. Haque, Kirk, Yang, and Schader qualified as Plaintiff's treating sources,[3] Plaintiff has not shown that the cited GAF scores were medical opinions within the meaning of the SSA's regulatory definitions. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."). The Tenth Circuit has indicated that GAF scores are potentially relevant evidence but are not, standing alone,

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000)) ("*DSM*"). "The most recent edition of the *DSM* omits the GAF scale for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Richards v. Colvin*, 640 F. App'x 876, 791 (10th Cir. 2016) (internal quotation marks omitted).

[3] The record reflects that Drs. Kirk, Yang, and Schader had only limited interaction with Plaintiff. *See, e.g.*, R. 509, 512-13, 520, 599-601, 602-04, 608-09, 611-13; *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

5

medical opinions. *See McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) (holding ALJ did not err in failing to assign weight to treatment notes presenting GAF scores that "reflect the clinicians' observations of [the claimant's] symptoms, the nature of her impairments, and the clinicians' diagnoses" but "do not indicate any prognoses" or "provide opinions as to what [the claimant] could still do despite her impairments," because such notes "do not qualify as medical opinions"); *Richards*, 640 F. App'x at 791 (finding no error in the ALJ's failure to specifically discuss GAF scores when the physicians failed to "explain[] how they calculated the scores," "link[] them to any particular symptoms," or "indicate how the GAF scores affected [the claimant's] functional abilities"); *cf. id.* at 792 (declining to consider argument that the ALJ erred in not evaluating GAF scores as medical opinions when claimant "fail[ed] to provide argument or authority that a GAF score constitutes a medical opinion").

Accordingly, Plaintiff's argument that the ALJ committed reversible error by failing to analyze the GAF scores as medical opinions, or to assign them specific weight, is unavailing. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (stating that an ALJ must discuss the weight assigned to medical opinions).

2. <u>Plaintiff has not shown that the ALJ failed to consider the GAF scores as evidence of Plaintiff's disability</u>

To the extent Plaintiff argues that the ALJ did not adequately consider the GAF scores as relevant medical evidence, the Court disagrees. The medical records dated after Plaintiff's alleged onset date show a range of GAF scores assessed by Dr. Haque, Dr. Kirk, and Dr. Schader:

6

- 5/28/14, GAF score of 45, assessed by Dr. Haque at North Rock Medication Clinic (R. 559);
- 6/24/14, GAF score of 34, assessed by Dr. Kirk when Plaintiff walked into Oklahoma County Crisis Intervention Center for evaluation but was not admitted (R. 578);
- 6/25/14, GAF score of 45, assessed by Dr. Haque at North Rock Medication Clinic (R. 679);
- 7/4/14, GAF score of 20, assessed by Dr. Kirk upon initial evaluation when Plaintiff was brought to the Oklahoma County Crisis Intervention Center after a suicide attempt (R. 612);
- 7/4/14, GAF score of 26, assessed by Dr. Kirk as part of the treatment plan at Oklahoma County Crisis Intervention Center (R. 604);
- 7/11/14, GAF score of 54, assessed by Dr. Schader upon discharge from Oklahoma County Crisis Intervention Center (R. 609);
- 7/25/14, GAF score of 45, assessed by Dr. Haque at North Rock Medication Clinic (R. 697);
- 8/22/14, GAF score of 45, assessed by Dr. Haque at North Rock Medication Clinic (R. 707);
- 9/16/14, GAF score of 45, assessed by Dr. Haque at North Rock Medication Clinic (R. 717).[4]

The ALJ expressly cited most of these scores in the written decision. Within a comprehensive discussion of Plaintiff's medical records, the ALJ noted: Dr. Haque's GAF score of 45 on May 28, 2014; Dr. Kirk's GAF score of 34 on June 24, 2015; Dr. Haque's GAF score of 45 on June 25, 2014; Dr. Schader's GAF score of 54 on July 11, 2014; and Dr. Haque's GAF score of 45 on July 25, 2014. R. 24-25. The only GAF scores that the

---

[4] Some of the GAF scores cited by Plaintiff were assessed prior to her alleged onset date of May 20, 2014. *See* Pl.'s Br. at 3 (citing R. 509 (Dr. Yang: Nov. 21, 2013), 514 (Dr. Schader: Nov. 26, 2013), 537 (Dr. Haque: Dec. 20, 2013)). Although medical evidence that predates a claimant's alleged onset date in some cases may shed light on a claimant's functional limitations during the relevant time period, Plaintiff has offered no argument as to how these scores do so. *See id*.

ALJ did not specifically mention were the scores of 20 and 26 assessed by Dr. Kirk on July 4, 2014; and Dr. Haque's scores of 45 assessed on August 22, 2014, and September 16, 2014. *See* R. 24-25.

The Court finds no error in the ALJ's failure to expressly cite these latter scores. *Cf. Hall v. Colvin*, No. CIV-15-105-CG, 2016 WL 5239832, at *7 (W.D. Okla. Sept. 22, 2016) ("[T]he fact that the ALJ did not discuss the GAF scores was not erroneous in and of itself."); *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("There is obviously no requirement that the ALJ reference everything in the administrative record."). With respect to the scores of 20 and 26, both assessed on July 4, 2014, after a suicide attempt, the ALJ discussed the suicide attempt, noted that Plaintiff was admitted to and stayed at the Oklahoma County Crisis Intervention Center, and stated that Plaintiff was assigned a GAF score of 54 upon discharge on July 11th. R. 24-25. While the low scores of 20 and 26 reflected a psychologist's determination at the time they were assessed, the higher GAF score assessed when Plaintiff was discharged indicates that a significantly different determination was made after Plaintiff's treatment at the Center. *See* R. 608 ("Reason for discharge: Exhibits improved mental status [consistent with] [treatment] goals/objectives . . . ."), 609 (Dr. Schader assessing a GAF score of 54 on July 11, 2014). Similarly, the GAF score of 34 was assessed on June 24, 2014, when Plaintiff walked into the Center for evaluation but was not admitted. R. 578-79. Instead, the treatment plan called for a re-evaluation in six hours, and when Plaintiff saw Dr. Haque the next day he assessed a GAF score of 45. *See* R. 579, 679. In both these instances, the ALJ discussed the GAF scores

with the greatest relevance to an assessment of Plaintiff's long-term limitations: the posttreatment scores. R. 24, 25.

More broadly, Plaintiff does not show that any of the GAF scores—which were unaccompanied by opinions or observations regarding specific, work-related limitations—are significantly probative evidence, the rejection of which would require discussion by the ALJ. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Plaintiff does not identify any work-related functional limitation demonstrated by the cited GAF scores but merely contends that the lower scores, including scores of 20, 26, 34, and 45, "were in conflict with the ALJ's finding of the ability to work." Pl.'s Br. at 3. The Tenth Circuit, however, has "repeatedly noted" "that generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are not essential to the RFC's accuracy." *Luttrell v. Astrue*, 453 F. App'x 786, 792 n.4 (10th Cir. 2011) (internal quotation marks omitted); *see Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that "were not linked to any work-related limitations" "were not particularly helpful" and could not "alone determine disability"); *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC . . . , it . . . taken alone does not establish an impairment serious enough to preclude an ability to work." (internal quotation marks omitted)); *Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004) (noting that because a GAF of 50 "may not relate to [claimant's] ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities"); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004)

(noting that an unexplained low GAF score might indicate an impairment "solely within the social, rather than the occupational, sphere"); *Cainglit v. Barnhart*, 85 F. App'x 71, 75 (10th Cir. 2003) ("In the absence of any evidence indicating that [the physicians] assigned these GAF scores [of 39 and 45] because they perceived an impairment in [claimant's] ability to work, the scores, standing alone, do not establish an impairment seriously interfering with [claimant's] ability to perform basic work activities."); *accord Hall*, 2016 WL 5239832, at *7; *Herring v. Berryhill*, No. CIV-17-332-STE, 2018 WL 577221, at *3 (W.D. Okla. Jan. 26, 2018).

Because the ALJ expressly considered the majority of Plaintiff's GAF scores and the scores themselves were not significantly probative, Plaintiff has not shown error with respect to the ALJ's consideration of those scores. *See Richards*, 640 F. App'x at 791; *Harper v. Colvin*, 528 F. App'x 887, 891-92 (10th Cir. 2012) (finding no error when ALJ failed to discuss GAF score that was "not linked to any particular symptoms at all").[5]

---

[5] Within her argument that the ALJ improperly considered the opinions of the treating physicians, Plaintiff nominally contends that the ALJ "committed clear reversible error" by ignoring (a) Plaintiff's assertion of symptoms, (b) "many, many references to disturbing mental health behaviors, to the point of suicide, [that] exist in the record," and (c) "numerous references to [Plaintiff's] serious mental health problems." Pl.'s Br. at 3, 6-7 (citing R. 479, 481, 489, 508, 559, 578, 584, 585, 591, 603, 678, 782, 785, 829). Plaintiff specifically points to her "visual and auditory hallucinations" and "suicidal feelings." *Id.* at 3. To the extent Plaintiff is arguing that the ALJ failed to properly consider this evidence, the contention fails because the ALJ summarized both Plaintiff's visual and auditory hallucinations and her suicidal feelings in the discussion of Plaintiff's medical history and Plaintiff has not shown how the ALJ's discussion was deficient. *See* R. 24-25; *cf. Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) (explaining that a reviewing court "may neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner").

B. *Whether the ALJ Properly Considered the Opinion of the State-Agency Examining Psychologist*

Plaintiff objects that the ALJ did not discuss the weight assigned to or adequately consider the opinion of R. Keith Green, PhD, a state-agency examining psychologist. Pl.'s Br. at 3-4; *see* R. 669-75 (Ex. 15F). While the ALJ did not expressly weigh Dr. Green's opinion, this failure was harmless, as Plaintiff has not shown any resulting prejudice.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). However, "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Id.* at 579. In that situation, the claimant "is not prejudiced because giving greater weight to the opinion would not have helped her." *Id.* (alteration and internal quotation marks omitted).

Such is the situation here. The ALJ thoroughly discussed the opinion, including Dr. Green's statement that he considered Plaintiff's prognosis to be "guarded." *See* R. 25, 26. The ALJ also included numerous restrictions in Plaintiff's RFC, which Plaintiff has not shown are inconsistent with any limitations identified in Dr. Green's opinion. *See* R. 23. Because Plaintiff has not shown that giving Dr. Green's opinion greater weight (or specifying the weight given) would have resulted in additional limitations in her RFC, the ALJ's failure to assign a weight to that opinion constitutes harmless error. *See Mays*, 739 F.3d at 578-79; *Keyes-Zachary*, 695 F.3d at 1165 (finding error harmless where ALJ failed

to assign weight to medical opinion but limitations assigned by physician were not inconsistent with those found by ALJ).

## C. *Whether the ALJ Properly Analyzed Plaintiff's Subjective Complaints*

Plaintiff asserts that the ALJ, in considering Plaintiff's allegations of disabling symptoms, "did not properly apply the well-respected credibility factors." Pl.'s Br. at 9.[6] In considering a claimant's subjective complaints of pain or other symptoms, an ALJ is required to consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). The SSA has provided guidance on how it considers claimants' statements regarding their symptoms:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

---

[6] Prior to issuance of the ALJ's decision, an ALJ's "credibility" evaluation was governed by Social Security Ruling 96-7p. The Commissioner has since issued Social Security Ruling 16-3p, which eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *4 (eff. Oct. 25, 2017, to be applied to decisions made on or after Mar. 28, 2016).

SSR 16-3p, 2017 WL 5180304, at *4. In addition to using all relevant evidence, the ALJ should consider the following factors:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *accord* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2016).

Here, the ALJ recited Plaintiff's self-reports and testimony regarding her depression, hallucinations, lack of energy, insomnia, and avoidance of people. R. 22, 24. The ALJ also reviewed the medical evidence of record and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 25-26. The ALJ further stated that Plaintiff's allegations "are not supported by objective findings and the history [of] medical treatment." R. 26. As support for this finding, the ALJ pointed to: (1) Plaintiff's medical records indicating that medications improved her symptoms; (2) findings by examining psychologist Dr. Green;

13

(3) inconsistent statements by Plaintiff regarding her ability to be around people and leave her house; (4) inconsistent statements regarding Plaintiff's ability to work; and (5) the lack of functional limitations in Plaintiff's medical record. R. 26.

Plaintiff challenges the ALJ's reliance on the first three of these grounds. Plaintiff does not challenge the ALJ's finding of inconsistent statements regarding Plaintiff's ability to work or the finding of a lack of functional limitations in the medical record. *See* Pl.'s Br. at 9-15.

Plaintiff argues that "the ALJ seems to have painted the picture that [Plaintiff] was not medication compliant because she was *choosing* to not take her medications, which is unfair." Pl.'s Br. at 12. Plaintiff mischaracterizes the ALJ's rationale. The ALJ did not find that Plaintiff was not credible because she was not medication compliant. Rather, the ALJ found that the medical evidence showing that Plaintiff's symptoms were improved when she was on her medication undercut Plaintiff's claim that her symptoms rendered her unable to work. Specifically, the ALJ cited medical evidence showing occasions when Plaintiff's increased depression, anxiety, and insomnia was caused by being off her medication. R. 26. The ALJ also noted that "her medications helped her symptoms when she was on them." R. 26; *see also, e.g.*, R. 818 (treatment note dated July 22, 2015, indicating Plaintiff was presenting for medication refill after "lengthy absence" and noting that Plaintiff "[r]eports medications were working when she had them").[7] The Court

---

[7] Plaintiff challenges the provider's statement that there had been a "lengthy absence" since Plaintiff's last medication refill, citing to progress notes issued prior to this treatment note. Plaintiff fails to appreciate, however, that the July 22, 2015, treatment note is a medication

discerns no error in the ALJ's finding that Plaintiff's improvement with medication affects the credibility of Plaintiff's description of her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (prescribing that the evaluation of symptoms includes consideration of effectiveness of medication).

Plaintiff next asserts that the ALJ erred in relying on examining psychologist Dr. Green's report, claiming that the ALJ was "unfair" in citing only certain portions of the report. Pl.'s Br. at 14. To this end, Plaintiff notes that "Dr. Green noted multiple areas where [Plaintiff's] thinking was impaired due to traumatic events from her past." Pl.'s Br. at 14.

In discussing Plaintiff's credibility, the ALJ stated that Dr. Green had found that Plaintiff's "[f]und of knowledge, abstract reasoning and the capacity for making good judgments were intact." R. 26; *see* R. 671. Dr. Green also reported that although Plaintiff's attention, pace, concentration, and numerical reasoning were impaired, her "[t]hought processes were goal-directed, coherent, logical, though narrowed due to preoccupation with painful ruminations about traumatic events and her fear of going out into public." R. 671. Dr. Green's overall conclusion was:

> Attention, concentration and pace were impaired. The ability to retain and carry out simple, detailed and more complex instructions was intact. Social relationships as described were positive for detachment and avoidance, activities of daily living as presented were constricted, though said to be carried out independently.

note ("MH Med Check Note") reflecting treatment from an Advanced Practice Nurse, while the other notes she cites are mental-health progress notes ("MH Progress Note"), reflecting treatment by mental-health professionals rather than medical professionals who are able to prescribe medications. *Compare* R. 794-816, *with* R. 817-19.

15

>One would estimate the severity of impairment of functional psychological capacity for work to be Mild to Moderate.

R. 672. The ALJ summarized Dr. Green's full report elsewhere in his decision. R. 25. And the ALJ's finding that Dr. Green's observations of Plaintiff indicate greater functioning than reflected in Plaintiff's description of her symptoms is sound. While Dr. Green reports significant restrictions in Plaintiff's work-related functioning, the ALJ adopted corresponding limitations in the RFC. *Compare* R. 671-72, *with* R. 23. The ALJ's specific citation of some observations of Dr. Green is meaningful in that it identifies ways in which Plaintiff's description of her symptoms is inconsistent with Dr. Green's report. Plaintiff has not shown error in the ALJ's finding that certain of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with her psychological capabilities and impairments as observed by Dr. Green. *See* SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").

Finally, Plaintiff contends that the ALJ erred in citing to evidence as contradicting Plaintiff's claims of avoiding being around people and not leaving her house. *See* Pl.'s Br. at 14-15. Plaintiff asserts, "[I]t looks as if the ALJ apparently intended to sway the reader that [Plaintiff] is a liar in a preposterous way to discredit her credibility." *Id.* Again, Plaintiff misstates the ALJ's decision. The ALJ did not find that Plaintiff is a "liar." Rather, the ALJ determined that Plaintiff's statement that she drinks wine "socially" and Plaintiff's failure to be present during a home visit were inconsistent with the testimony

16

that her symptoms are so severe that she avoided people and did not leave her house. *See* R. 26, 778, 788, 807. Plaintiff has not shown error in the ALJ's finding of inconsistent statements by Plaintiff. *See Walters v. Colvin*, 604 F. App'x 643, 646 (10th Cir. 2015) ("An ALJ may factor into [his] credibility analysis a claimant's inconsistent 'reports of what he was able and unable to do.'" (alteration omitted) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007))); *see also Bowman*, 511 F.3d at 1272.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. Judgment will issue accordingly.

IT IS SO ORDERED this 17th day of September, 2018.

_____
CHARLES B. GOODWIN
United States District Judge

17